Kevin D. McCullough
State Bar No.  00788005
Kathryn G. Reid
State Bar No.  24068126
Shannon S. Thomas
State Bar No. 24088442
Zachary G. Levick
State Bar No. 24119380
ROCHELLE McCULLOUGH, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone:  214-953-0182
Facsimile:  214-953-0185
kdm@romclaw.com
kreid@romclaw.com
sthomas@romclaw.com
zlevick@romclaw.com

SPECIAL LITIGATION COUNSEL FOR
ROBERT YAQUINTO, JR., CHAPTER 7 TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 18-32123-SGJ-7 |
| JRJR33, INC., and | § | CASE NO. 18-32124-SGJ-7 |
| THE LONGABERGER COMPANY | § | |
| | § | Jointly Administered Under |
| DEBTORS. | § | Case No. 18-32123-SGJ-7 |

**TRUSTEE'S MOTION, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AND COMPROMISE WITH DEBTOR'S FORMER DIRECTORS AND OFFICERS AND CERTAIN RELATED PARTIES, INCLUDING BAR ORDER PROHIBITING PARTIES FROM ASSERTING CERTAIN CLAIMS**

PLEASE TAKE NOTICE THAT A HEARING ON THIS MOTION IS SCHEDULED TO BE HELD BEFORE THE HONORABLE STACEY G. C. JERNIGAN ON **THURSDAY, OCTOBER 14, 2021, AT 9:30 A.M**.  PLEASE REFER TO THE NOTICE OF HEARING FOR INSTRUCTIONS ON IN-PERSON AND REMOTE APPEARANCES PURSUANT TO HYBRID HEARING PROCEDURES CONTAINED IN GENERAL ORDER 2021-06.

ANY RESPONSE TO THIS MOTION MUST BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TX 75202 AND A COPY SERVED UPON COUNSEL FOR THE MOVING PARTY ON OR BEFORE **OCTOBER 8, 2021,** WHICH IS AT LEAST TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE HEREOF.

IF NO RESPONSE TO THIS MOTION IS TIMELY FILED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.

**TO THE HONORABLE STACEY G. C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE:**

NOW COMES Robert Yaquinto, Jr., the Chapter 7 Trustee in the above-captioned case ("Trustee"), and for his *Motion, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for Entry of an Order Approving Settlement and Compromise with Debtor's Former Directors and Officers and Certain Related Parties, Including Bar Order Prohibiting Parties from Asserting Certain Claims* ("Motion") would show the Court as follows:

## INTRODUCTION

The Trustee hereby moves, pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 9019(a) and Section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for an order (the "Order")[1] (1) approving a compromise and settlement[2] between the Trustee, on one hand, and Michael Bishop ("Bishop"), William Randall ("Randall"), John P. Rochon ("J. Rochon"), Donna Rochon ("D. Rochon"), John P. Rochon, Jr. ("Rochon Jr."),

---

[1] Pursuant to N.D. Tex. L.B.R. 9019-1(c), the proposed form of the Order is attached hereto as <u>Exhibit A</u>.

[2] The settlement and compromise contemplated herein implicates an Executive Edge Broad Form Management Liability Insurance Policy, under Policy Number 01-833-50-92 (together, as applicable, with any and all declarations, amendments, supplements, and endorsements, and subject to all of the policies' terms, conditions and exclusions, collectively, the "Policy"), issued by Illinois National Insurance Company ("Insurer").

and Heidi Rochon Hafer ("Hafer")[3] on the other hand, and (2) making certain factual findings and barring certain claims against the Insureds and Insurer, as described in more detail herein. This compromise and settlement will settle and result in the dismissal with prejudice[4] of the adversary proceeding styled *Robert Yaquinto, Jr., Chapter 7 Trustee v. John P. Rochon, et al*, United States Bankruptcy Court, Northern District of Texas, Dallas Division, Adv. No. 20-03085-sgj ("D&O Adversary"), and will partially settle and result in partial dismissal with prejudice[5] of the adversary proceeding styled *Robert Yaquinto, Jr., Chapter 7 Trustee v. JGB Collateral, LLC, et al*, United States Bankruptcy Court, Northern District of Texas, Dallas Division), Adv. No. 20-03086-sgj ("JGB Adversary") as it relates to claims against J. Rochon and D. Rochon.[6]

The Parties have been involved in out-of-court negotiations since late last year. As a result, the Parties have reached a settlement ("Settlement"), subject to the Court's approval, as embodied in the Settlement Agreement attached hereto and incorporated herein as <u>Exhibit B</u>.[7] The Settlement contemplates the following material terms: (i) Trustee will receive, for the benefit of

---

[3] Bishop, Randall, J. Rochon, D. Rochon, Rochon Jr., and Hafer are collectively referred to herein as the "Defendants" or "Defendant Releasees." Defendants and all other persons or entities who are "Insured" as defined in the Policy are collectively referred to herein as "Insureds." The Trustee and the Defendants are collectively referred to herein as the "Parties" or singularly as a "Party."

[4] Pursuant to N.D. Tex. L.B.R. 9019-1(c), the proposed form of the order dismissing the D&O Adversary is attached hereto as <u>Exhibit C</u>.

[5] Pursuant to N.D. Tex. L.B.R. 9019-1(c), the proposed form of the order dismissing in part the JGB Adversary is attached hereto as <u>Exhibit D</u>.

[6] The claims to be dismissed in the JGB Adversary are: (i) Count 2 – Negligent Misrepresentation against J. Rochon; (ii) Count 3 – Marshaling of Assets against the JGB Defendants, J. Rochon and D. Rochon; and (iii) Count 4 – Avoidance and Recovery of 1-Year Insider Preferences against J. Rochon and D. Rochon.

[7] With the exception of defendant Bishop, all Parties have executed the Settlement Agreement. Bishop is currently unable to execute the document but has agreed to the settlement. It is anticipated that the Trustee will have his signature by the October 14th hearing date.

the Estates,[8] a minimum of $3,200,000.00, plus any remaining Policy proceeds after payment of the Defendants' Insurer-approved Defense Costs (as defined in the Policy), but excluding a $50,000 carve out which is being withheld and earmarked for any future Defense Costs related to the Bar Order (as defined below); (ii) broad mutual releases, including releases of the Insurer, and the Policy, which is a "wasting policy" will be cancelled and deemed completely exhausted; and (iii) the entry of a Bar Order ("Bar Order") in favor of the Insureds and the Insurer in order to establish finality with respect to claims that are derivative of or duplicative of the Trustee's claims, but excepting independent claims as provided in the Settlement Agreement.

The Trustee respectfully submits that the Settlement, including the Bar Order, is fair and equitable, meets the requirements for approval of settlements and such releases, represents the Trustee's prudent business judgment, was obtained through extensive arms-length negotiations, and is in the best interests of the creditors of the Debtors' Estates. Further, there is also good cause to issue the Bar Order because the settlement payment will be a substantial contribution to allow the Trustee to make distributions to the creditors of the Debtors' Estates. Conversely, without the settlement payment, distributions would be significantly smaller, or possibly, none at all.

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory basis for this Motion is Section 105 of the Bankruptcy Code. The procedural predicate for the requested relief is Bankruptcy Rule 9019.

---

[8] The settlement proceeds will be allocated equally (50/50) between the bankruptcy estates; however, the Trustee expressly reserves the right to further petition the Court should he determine that, in his business judgment, a different allocation is more appropriate.

# FACTUAL BACKGROUND[2]

A. **Bankruptcy Cases.**

2. On June 29, 2018 ("Petition Date"), JRjr33, Inc., ("JRjr33") and The Longaberger Company, ("Longaberger," and together with JRjr33, Inc., the "Debtors") filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court").

3. On September 14, 2018, the Bankruptcy Court entered an order granting joint administration of the Debtors' bankruptcy cases (the "Bankruptcy Case"). Thereafter, the Bankruptcy Case was converted to a chapter 7 proceeding on October 26, 2018. Robert Yaquinto, Jr. was appointed as the chapter 7 trustee.

4. The Trustee has sold substantially all of the Debtors' assets, comprised largely of Longaberger's basket inventory and JRjr33's intellectual property rights, and continues to administer the Debtors' Estates, including, without limitation the prosecution of pending adversaries and claims reconciliation.

B. **The Policy.**

5. Prior to the Petition Date, the Insurer issued an "Executive Edge" insurance policy to JRjr Networks, providing certain coverage to the Insureds for the period from August 19, 2017 to August 19, 2018 under Policy Number 01-833-50-92 (together, as applicable, with any and all declarations, amendments, supplements, and endorsements, and subject to all of the policies' terms, conditions and exclusions, collectively, the "Policy"). The Policy has a $5,000,000 limit of liability ("Policy Limits").

---

[9] These are the Trustee's allegations of background facts and should not be construed as admissions of facts made or agreed to by the parties to the Settlement Agreement (defined below).

6. The Policy generally provides certain coverage to protect and indemnify the directors and officers of JRjr33 in connection with Losses (as such term is defined in the Policy), including Defense Costs (as such term is defined in the Policy), judgments, and settlements, arising from particular types of claims that might be made against them in their capacity as directors or officers of the Debtors or in connection with investigations dealing with their roles as directors or officers of the Debtors.

7. The Policy is written on a "claims made and reported basis," and the claims made by Trustee against the Defendants who are an Insured under the Policy, as alleged in the Complaints (defined below) in the D&O Adversary and JGB Adversary, are the only known timely claims remaining against the Policy.

8. The Policy is a "wasting policy," meaning the Policy Limits available to satisfy a settlement or judgment are reduced by Defense Costs.  The Policy defines "Defense Costs" in relevant part, as the "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from (i) the investigation, adjustment, defense and/or appeal of a Claim against an Insured[.]"

**C. The Adversaries and Trustee's Claims.**

9. On June 26, 2020, the Trustee filed *Trustee's Original Adversary Complaint* against the Defendants and R-Nine Nine Nine, Inc. f/k/a R-999, Inc. f/k/a Richmont Holdings, Inc. ("Richmont Holdings"), thereby initiating the D&O Adversary.  The Trustee alleged, among other things, that the Defendants and Richmont Holdings were liable for damage caused to the Debtors as a result of breach of fiduciary duty, corporate waste, unjust enrichment, abuse of control, gross mismanagement, and transfers avoidable under Chapter 5 of the Bankruptcy Code and the Uniform Fraudulent Transfer Act (collectively, the "D&O Claims").

10. On June 26, 2020, the Trustee filed *Trustee's Original Adversary Complaint* against JGB Collateral, LLC, JGB Capital, LP, JGB (Cayman) Port Ellen, Ltd., JGB Partners, LP (collectively, the "JGB Defendants"), Rochon Capital Partners Lending, Ltd. f/k/a Rochon Capital Partners, Ltd. ("Rochon Capital"), J. Rochon, and D. Rochon, thereby initiating the JGB Adversary. [10] The Trustee alleged, among other things, that J. Rochon and D. Rochon were liable for damage caused to the Debtors as a result of negligent misrepresentation and transfers avoidable under Chapter 5 of the Bankruptcy Code and the Uniform Fraudulent Transfer Act, and that equitable grounds existed to impose marshaling against J. Rochon and D. Rochon, as personal guarantors of the debt owed to the JGB Defendants (collectively, the "JGB Claims").

11. The Defendants dispute the validity of the D&O Claims and JGB Claims against them, and through counsel, have informed the Trustee that they will assert numerous affirmative defenses and vigorously defend their position through summary judgment, and trial if necessary.

12. From August 2020 to August 2021, the Parties obtained a temporary abatement of the D&O Adversary, and all related deadlines, to allow the Parties to engage in an informal, alternative dispute resolution process proposed by the Insurer and moderated by Special Settlement Counsel. On or about November 10, 2020, the Trustee provided a confidential settlement submission to Special Settlement Counsel, which outlined in great detail the Trustee's position, alleged claims, evidence, and amount of alleged damages pertaining to the D&O Adversary. The Parties have been conferring on settlement terms since at least January 2021. The Parties have been drafting, modifying, and editing various forms of a settlement agreement since at least March 2021.

---

[10] The live pleading in the JGB Adversary is the *Trustee's First Amended Adversary Complaint*, filed on May 10, 2021.

**D. Settlement Agreement.**

13. The Parties and their respective professionals have engaged in lengthy negotiations in an effort to resolve all claims the Trustee identified or asserted or could assert against the Insureds, the Insurer, and the Policy, in any manner or that might implicate the Policy, including, without limitation in the Bankruptcy Case, the Adversary Proceeding, or otherwise relating to the operations of the Debtors, and/or any bankruptcy actions or other claim or action, as more fully set forth in the Settlement Agreement (collectively, "Claims").

14. As a result of the Parties' good-faith efforts, they successfully resolved their contested issues and entered into the Settlement Agreement, which subject to Bankruptcy Court approval, will resolve all of the Claims, without the further cost and expense of litigation.

15. The salient terms of the Settlement, as set forth in more detail in the Settlement Agreement, are summarized as follows:

> (a) **Settlement Payment**: Defendants shall cause the Insurer to pay to Trustee, for the benefit of the Debtors' Estates, the agreed Initial Settlement Payment in the amount of $3,200,000. The Defendants shall further cause the Insurer to pay to the Trustee the Final Settlement Payments, which is the balance of the Policy Limits after payment of Defense Costs[11] and a $50,000 carve out for Defense Costs related to the Bar Order;
>
> (b) **Dismissal of D&O Adversary and Partial Dismissal of JGB Adversary**: Within seven (7) days of the Final Payment Date, Trustee shall file appropriate documents with the Court to cause the dismissal of the D&O Adversary in its

---

[11] Defense Costs to date are approximately $1,550,000.00.

entirety, and partial dismissal of the JGB Adversary. *See* Exhibits C and D for the proposed form of dismissal orders.

(c) **Releases**: As of the Final Payment Date, mutual releases will be effective, including all claims that were or could have been raised in connection with the Bankruptcy Case, the Adversary Proceeding, and the Claims, except as otherwise provided in the Settlement Agreement. In addition, upon Trustee's receipt of the Final Settlement Payment, the Policy shall be deemed immediately discharged, exhausted, and cancelled.

(d) **Bar Order:** The Settlement is contingent upon, among other things, the Bankruptcy Court entering the 9019 Order incorporating a Bar Order permanently enjoining the pursuit of claims against the Insureds and Insurer as more specifically stated in the Settlement Agreement.

## RELIEF REQUESTED

16. The Trustee respectfully requests that this Court enter an Order, the proposed form of which is attached hereto as <u>Exhibit A</u>, approving the Settlement Agreement attached hereto as <u>Exhibit B</u> and authorizing the Parties to consummate the Settlement.

**A. Settlement.**

17. Bankruptcy Rule 9019 provides, in pertinent part, that "[o]n motion by the trustee and after notice and hearing the court may approve a compromise and settlement." Under Rule 9019, "[a]pproval should only be given if the settlement is 'fair and equitable and in the best interest of the estate.'" *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.*), 119 F.3d 349, 355 (5th Cir. 1997) (internal quotations omitted).

18. "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, '[c]omparing the terms of the compromise with the likely rewards of litigation.'" *In re Cajun Elec.*, 119 F.3d at 355 (citations omitted). "Compromises are favored in bankruptcy" since they minimize litigation costs and expedite the administration of the bankruptcy estate. *In re Idearc Inc.,* 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009) (*citing Martin v. Martin*, 91 F.3d 389, 393 (3d Cir. 1996)). The bankruptcy court, however, should not substitute its own judgment for the judgment of a trustee or a debtor. *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985). "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.*, 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005). Thus, in assessing a settlement, a court need only "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

19. In particular, the Court should evaluate the following factors ("*Cajun Electric* Factors*"*): (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; (3) the interests of creditors with proper deference to their reasonable views; and (4) the extent to which the settlement is truly the product of arm's length negotiations. *Mirant*, 348 B.R. at 739-40 (citing *Cajun Electric Power Coop. Inc.*, 119 F.3d at 355-56) (citations omitted)).

20. As set forth in greater detail below, the terms of the Settlement Agreement satisfy the *Cajun Electric* Factors.

(a) **Probability of Success:** The Claims and alleged damages against the Defendants in the D&O Adversary and JGB Adversary involve complex factual and legal issues, all of which are contested by the Parties. While there is direct and substantial evidence of compliance failures, including in JRjr33's own SEC filings, there are issues concerning whether those failures were the proximate cause of the Debtors' downfall as the companies in JRjr33's portfolio were already distressed upon acquisition. Additionally, the business judgment rule provides a powerful defense for directors and officers, which could prove to be outcome-determinative in favor of all or some of the Defendants. While the Trustee has built a strong case, it is impossible to negate the risk of an adverse judgment.

(b) **Complexity and likely duration of the litigation and any attendant expense, inconvenience and delay**: The evidence necessary to prove the Trustee's Claims, including novel claims like marshaling, is considerable and costly. Multiple expert witnesses would be necessary to address accounting, management, and damages issues. And if the eight months of settlement negotiations and over $1.5 million in Defense Costs already incurred and deducted from the Policy Limits thus far is any indication of how formal litigation would proceed, the Policy would likely be exhausted well before the completion of discovery.

(c) **Interests of Creditors**: The Settlement guarantees a minimum cash infusion into the estate of $3,200,000, with the potential for more depending on further depletion of the Policy Limits by Defense Costs related to obtaining Court-approval of the Settlement and consummating the Settlement Agreement. While the Trustee's alleged damages calculation far exceeds this recovery, the alternative to this

Settlement is not appealing as it means collecting from individuals. Realistically, that means attempting to bust trusts, chase assets, and standing in line behind multiple creditors that already have multi-million-dollar judgments against certain Defendants. Collections will take years and a meaningful recovery is speculative at best.

(d) **Product of arm's length negotiations**: Settlement negotiations were structured in a manner customarily used by the Insurer, wherein the Parties unanimously consent to a process moderated by Special Settlement Counsel who assesses the strengths and weaknesses of the claims, defenses, and potential outcomes. There is no room for collusive side deals in that process, nor would the Trustee, who has decades of service as a panel trustee in the Northern District, engage in such behavior.

21. Based on these considerations, entering into the Settlement is a prudent exercise of the Trustee's business judgment, as it guarantees a multi-million-dollar recovery, whereas the alternative only guarantees an uncertain outcome and speculative recovery even if the Trustee wins at trial and prevails in an appeal.

**B. Bar Order.**

22. As set forth in greater detail in the Settlement Agreement, the Defendants expressly condition payment of the Settlement Payments on the Trustee's agreement to seek a Bar Order in favor of the Insureds and Insurer in order to establish finality with respect to the Claims and the Policy and to preclude the assertion by third parties of claims that are derivative or duplicative of the Trustee's claims. *See S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.* (*In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1152-53 (5th Cir. 1987) (holding that since alter ego claim was available to all creditors generally and could be brought by a corporation in its own name against

its principals under state law, claim was property of the estate and that competing claims that were not personal in nature were stayed under section 362 of the Bankruptcy Code and general bankruptcy policies); *In re Madoff*, 848 F. Supp. 2d 469, 488 (S.D.N.Y. 2012) (citing case law approving orders that bar claims that are derivative or duplicative of debtor claims brought by the trustee).

23. To be clear, the Bar Order shall NOT (i) relieve the Parties from their obligations under the Settlement Agreement; (ii) bar or otherwise affect any claims or defenses in other currently pending actions or proceedings in which any of the Parties has appeared as a named party; (iii) bar or otherwise affect any claims or defenses between the Trustee and the JGB Defendants and Rochon Capital in the JGB Adversary; nor (iv) preclude third-parties from pursuing any independent claim or action against any of the Insureds, but only if such independent claim or action is completely and wholly unrelated to the activities of the Debtors and such claim is not able to implicate the Policy in any manner.

24. As set forth in greater detail in the Settlement Agreement, the Court shall expressly retain jurisdiction to enter final orders and judgments with regard to the scope of the Bar Order.

25. The Bar Order is warranted under the circumstances here because: (i) it involves a claims-made wasting Policy; (ii) all known claims implicating the Policy have been made; (iii) the Insureds own the rights to the proceeds of the Policy and need the proceeds to defend claims that could implicate the Policy; (iv) only the Trustee may bring claims that can implicate the Policy post-bankruptcy; (v) the Trustee is agreeing to release all claims that could implicate the Policy in exchange for substantial proceeds from the Policy; (vi) it is possible that creditors and other persons may attempt to initiate claims that implicate the Policy post-settlement, and such claims are legally unviable because the Trustee on behalf of the Estates solely owns such derivative

claims; (vii) the Insureds are requesting, and Trustee agrees, that the Court enter a Bar Order to preclude clearly any and all claims that may implicate the Policy so that the Insureds and Insurer may freely part with the proceeds without risk of the need to defend meritless claims in the future.

26. Moreover, the Insurer also requires this clarity and a finding that the claims have all been made and the Policy is deemed exhausted and cancelled, because such meritless claims could cause coverage and other legal disputes between the Insureds and the Insurer for a failure to meet the Policy's requirements. The Bar Order is necessary for the Trustee to monetize the Claims, which will benefit all creditors. Moreover, the automatic stay prevents any individual creditor or other person from asserting any of the claims that are the subject of the Settlement Agreement. Given that fact and that the Bar Order does not affect personal, non-derivative or non-Estate claims, no creditor or other person is unreasonably prejudiced by the Bar Order.

27. Based on the foregoing, the Trustee respectfully submits that the Court should approve the Bar Order as an integral part of the Settlement Agreement.

**C. Insurer's Payment of Defense Costs.**

28. On November 24, 2020, the Court entered an agreed order between the Parties and Insurer concerning the payment of reasonable Defense Costs. Dkt. No. 209. That order specifically contemplated Defense Costs arising from the D&O Adversary. Since the Settlement contemplates the certain claims in the JGB Adversary being dismissed, the Settlement Agreement and proposed Order modifies the automatic stay to the extent necessary to capture Defense Costs related to the JGB Adversary. To that end, the Order should be immediately valid with respect to the automatic stay upon its entry and the 14-day stay imposed by Rule 4001(a) should be waived.

## CONCLUSION

29. For the reasons stated above, Trustee respectfully submits that the Settlement and Bar Order meet the applicable legal standards for approval, including satisfying all four of the *Cajun Electric* Factors, are in the best interest of the Debtors' Estates and their creditors, and represent the exercise of Trustee's sound and prudent business judgment. Moreover, the Settlement will result in meaningful cash to the Estates and avoids lengthy, burdensome, and expensive litigation.

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that this Court enter an Order, substantially in the form of the proposed Order attached hereto as Exhibit A: (a) granting the Motion; (b) approving the terms of the Settlement Agreement (including approval of the Bar Order and the requested modification of the automatic stay, to the extent applicable, regarding the Defense Payments); (c) finding that no other or further notice is required beyond N.D. Tex. L.B.R. 2002-1(f); and (d) granting any further relief as the Court deems just and proper.

Dated: September 17, 2021.

Respectfully submitted,

By:/s/ *Shannon S. Thomas*

Kevin D. McCullough
State Bar No. 00788005
Kathryn G. Reid
State Bar No. 24068126
Shannon S. Thomas
State Bar No. 24088442
Zachary G. Levick
State Bar No. 24119380
ROCHELLE McCULLOUGH, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: 214-953-0182
Facsimile: 214-953-0185
kdm@romclaw.com
kreid@romclaw.com
sthomas@romclaw.com
zlevick@romclaw.com

SPECIAL LITIGATION COUNSEL FOR
ROBERT YAQUINTO, JR., CHAPTER 7 TRUSTEE