# EXHIBIT B

## SETTLEMENT AGREEMENT[1]

The parties listed in (i)-(vii) below, who are referred to herein collectively as the "**Parties**" or in the singular case as a "**Party**," make this agreement ("**Settlement Agreement**") by and among each of them:

(i)      ROBERT YAQUINTO, JR., ("**Trustee**"), Chapter 7 Trustee of the bankruptcy estates of JRjr33, Inc. and The Longaberger Company (collectively, "**Debtors**");

(ii)     MICHAEL BISHOP ("**Bishop**");

(iii)    WILLIAM H. RANDALL ("**Randall**");

(iv)    JOHN P. ROCHON ("**J. Rochon**");

(v)     DONNA ROCHON ("**D. Rochon**");

(vi)    JOHN P. ROCHON, JR. ("**Rochon Jr.**"); and

(vii)   HEIDI ROCHON HAFER ("**Hafer**").

Bishop, Randall, J. Rochon, D. Rochon, Rochon Jr., and Hafer are referred to hereincollectively as the "**Defendants**."

Bishop, Randall, J. Rochon, D. Rochon, Rochon, Jr., Hafer and all other persons or entities who are an "Insured" as defined in the Policy, are referred to collectively as the "**Insureds**." The Trustee and Defendants are referred to collectively as the "**Parties**."

R-Nine Nine Nine, Inc. f/k/a R-999, Inc. f/k/a Richmont Holdings, Inc. is referred to herein as "**Richmont Holdings**".

## RECITALS

**WHEREAS**, on June 29, 2018 ("**Petition Date**"), both of the Debtors filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

---

[1] All capitalized terms not defined initially herein shall have the same meaning as defined later in the Settlement Agreement, or if not defined, as in the Policy.

("**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("**Court**"). *See In re JRjr33, Inc.* (Case No. 18- 32123-SGJ-7) and *In re The Longaberger Company* (Case No. 18-32124-SGJ-7), United States Bankruptcy Court, Northern District of Texas, Dallas Division (collectively, "**Bankruptcy Case(s)**," or "**Estate(s)**");

**WHEREAS**, on September 14, 2018, the Court entered an Order granting the joint administration of the Debtors' Bankruptcy Cases for procedural purposes only under Lead Case No. 18-32123-SGJ-7;

**WHEREAS**, on October 26, 2018, the Court entered an Order converting the Bankruptcy Cases to Chapter 7 cases, and thereafter, the U.S. Trustee's Office appointed Robert Yaquinto, Jr. as Chapter 7 Trustee of the Debtors' Estates;

**WHEREAS**, prior to the Petition Date, Illinois National Insurance Company ("**Insurer**")[2] issued an Executive Edge Broad Form Management Liability Insurance Policy, under Policy Number 01-833-50-92 (together, as applicable, with any and all declarations, amendments, supplements, and endorsements, and subject to all of the policies' terms, conditions and exclusions, collectively, the "**Policy**"), to JRJR Networks[3] for the initial policy period from August 19, 2017 through August 19, 2018 ("**Policy Period**");

**WHEREAS**, on June 26, 2020, the Trustee filed *Trustee's Original Adversary Complaint* against J. Rochon, Rochon, Jr., Hafer, Bishop, Randall, and Richmont Holdings, thereby initiating the adversary proceeding styled *Robert Yaquinto, Jr., Chapter 7 Trustee v. John P. Rochon, et al,*

---

[2] All references to the Insurer include Illinois National Insurance Company and AIG Claims, Inc., on behalf of themselves and their respective predecessors, successors-in-interest, assigns, subrogees, and persons acting by or through any of the foregoing.

[3] JRjr33, Inc. did business as JRJR Networks.

United States Bankruptcy Court, Northern District of Texas, Dallas Division, Adv. No. 20-03085-sgj ("**D&O Adversary**");

**WHEREAS**, pursuant to the agreement of the Parties, the Court has entered Orders abating the D&O Adversary, the last of which extended the abatement to **September 2, 2021**;

**WHEREAS**, on June 26, 2020, the Trustee filed *Trustee's Original Adversary Complaint* against JGB Collateral, LLC, JGB Capital, LP, JGB (Cayman) Port Ellen, Ltd., JGB Partners, LP (collectively, the "**JGB Defendants**"), Rochon Capital Partners Lending, Ltd. f/k/a Rochon Capital Partners, Ltd. ("**Rochon Capital**"), J. Rochon, and D. Rochon. *See Robert Yaquinto, Jr., Chapter 7 Trustee v. JGB Collateral, LLC, et al*, United States Bankruptcy Court, Northern District of Texas (Dallas Division), Adv. No. 20-03086-sgj ("**JGB Adversary**")[4];

**WHEREAS**, on November 24, 2020, the Court entered the *Agreed Order Granting Motion for Relief from the Automatic Stay to Authorize Payments of Losses, Including Defense Costs, Related to Adversary Proceeding* [Dkt. No. 209] ("**Stay Relief Order**") whereby the automatic stay was modified and lifted to allow the Insurer, in its sole and exclusive discretion, to, among other things, settle, advance, and make payment from the policy proceeds on behalf of all Insureds under the Policy;

**WHEREAS**, the Policy is written on a "claims made and reported" basis, and the claims made by the Trustee against the Insureds in the D&O Adversary and JGB Adversary are the only known timely claims remaining against the Policy;

**WHEREAS**, in an effort to efficiently and amicably resolve the contested issues in a cost-effective manner, the Parties and/or their counsel entered into ongoing settlement negotiations,

---

[4] The live pleading in the JGB Adversary is the *Trustee's First Amended Adversary Complaint*, filed on May 10, 2021,

including the exchange, review and analysis of documents, legal analysis, ongoing settlement negotiations, written settlement proposals, and numerous conference calls;

**WHEREAS**, the Trustee asserts there is merit to the Claims against the Defendants, and the Defendants assert there is not; but each recognizes the complexity of the Claims and issues, and the number of Parties involved will require significant time and expense to prosecute or defend, as the case may be, and it is difficult at this point to assess the probability of success in litigation;

**WHEREAS**, the Insurer has raised questions as to whether coverage is in fact afforded with respect to any Claims against the Defendants, makes no admission as to whether the Defendants, and any other alleged Insured are actual "Insureds" as defined in the Policy, and has reserved all rights and defenses available to it under the Policy and applicable law;

**WHEREAS**, as a result of the Parties' negotiations, and without admitting the validity of any allegations or any liability in respect thereto, the Parties have reached an agreement, the terms of which are set forth in this Settlement Agreement, providing for a settlement of all claims that the Trustee has identified or asserted or could assert against the Defendants, all Insureds and the Insurer, in any manner, including, without limitation in the Bankruptcy Cases, the D&O Adversary, the JGB Adversary, settlement communications, any litigation, or otherwise relating to the operations of the Debtors, and/or any bankruptcy actions or other claim or action (collectively, "**Claims**"), on the terms and subject to the conditions set forth below ("**Settlement**").

**WHEREAS**, the Parties have determined that the Settlement is fair, reasonable, and adequate, and is in the best interest of the Parties, the Debtors' Estates, and the creditors of the Debtors' Estates;

**WHEREAS**, the Parties intend this Settlement Agreement to be a binding agreement that sets forth the terms and obligations of the Parties for the complete and final resolution of any and all Claims, subject only to Bankruptcy Court approval in the Debtors' Bankruptcy Cases;

**NOW, THEREFORE**, in consideration of the mutual promises and the performance of the covenants and agreements hereinafter contained, the Parties represent, warrant, consent and agree as follows:

1.  **Adoption of Recitals**.  The Parties adopt the above recitals as being true and correct, and incorporate the recitals herein as material parts of this Settlement Agreement.

2.  **Settlement Payment**.  For and in consideration of each of the terms set forth herein, the Defendants shall cause the Insurer to pay from the Policy Proceeds:

    a.  the sum of Three Million, Two Hundred Thousand Dollars ($3,200,000.00) (the "**Initial Settlement Payment**"); and

    b.  the remaining balance of the Limit of Liability of the Policy (the "**Final Settlement Payment**" and together with the Initial Settlement Payment, the "**Settlement Payments**") after the Insurer makes the following deductions: (i) the Initial Settlement Payment, (ii) Defense Costs paid through the Defense Costs Deadline (defined below), and (iii) Fifty Thousand Dollars ($50,000.00) (the "**Bar Order Defense Costs**").

Insureds shall submit all requests for reimbursement of Defense Costs (other than Bar Order Defense Costs) within thirty (30) days of the 9019 becoming a Final Order (the "**Defense Costs Deadline**"). Any requests for reimbursements of Defense Costs (other than Bar Order Defense Costs) incurred or submitted by the Insureds after the Defense Costs Deadline shall not be reimbursable by the Insurer. The Bar Order Defense Costs shall remain available to fund the Defense Costs of Insureds for the enforcement of the Bar Order (defined below) against any future claims against Insureds in violation of said Bar Order. The Initial Settlement Payment shall be made to the Trustee within ten (10) business days after the later date that (a) the Bankruptcy Court enters the 9019 Order (including a Bar Order), (b) the 9019 Order (including the Bar Order) has

become a Final Order (defined below), and (c) the Trustee has provided to the Insurer a W-9 form or other such necessary information to comply with any withholding requirements of any governmental unit. The Final Settlement Payment shall be made to the Trustee thirty (30) business days after Defense Costs Deadline. These are the only conditions to the Insurer making the Settlement Payments, and any and all conditions provided in the Policy are deemed fulfilled and satisfied in consideration of the obligations herein, with the exception of the terms regarding payment of Defense Costs set forth in Section 11 below.

       3.     **9019 Motion**. Within three (3) business days after this Settlement Agreement is fully executed, the Trustee shall file a motion with the Bankruptcy Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Bankruptcy Code Section 105, seeking (i) approval of the terms and conditions of this Settlement Agreement, (ii) approval and relief from the automatic stay, to the extent it applies, for the Insurer to make the Settlement Payments and pay the Defense Costs, as discussed below, and (iii) the issuance of a bar order ("**Bar Order**") in favor of the Defendants, all Insureds and Insurer that releases the Defendants, all Insureds and the Insurer from any and all claims that may implicate the Policy, including, without limitation, any and all other claims, if any, that may be disguised derivative claims that are in actuality claims the Debtors or Trustee have possessed, now possess, or could ever possess as rightful holder of derivative claims of the Debtors or the Debtors' Estates that may implicate the Policy ("**9019 Motion**"). The 9019 Motion shall be in form and content reasonably acceptable to each of the Parties.

       4.     **Bar Order**. In order to facilitate the Settlement contained herein, and as an essential, material and integral element of such Settlement (without which the Defendants would not enter into this Settlement Agreement and make the Settlement Payments), the 9019 Motion

shall contain an obligation for the Trustee to seek entry of a Bar Order, which Bar Order shall permanently bar, prohibit, enjoin and restrain the filing, commencing, prosecuting, conducting, asserting or continuing in any manner, directly, indirectly or derivatively, any suit, action, cause of action, cross-claim, counterclaim, third-party claim, or other demand (including any of the Claims being released herein), in any federal or state court or any other judicial or non-judicial proceeding (including, without limitation, any proceeding in any judicial, arbitral, mediation, administrative, or other forum) by any Barred Person (as defined below) against or affecting any of the Defendants, all other Insureds, and the Insurer ("**Insured Released Parties**") which is based in whole and part on any allegation, claim, demand, cause of action, matter or fact directly or indirectly relating in any way to or arising in connection with the Policy, known or unknown, and/or the facts and circumstances underlying the Claims, whether or not asserted therein, including, without limitation, any and all other potential claims that may be disguised derivative claims that are in actuality claims the Trustee has possessed, now possesses, or could ever possess as rightful holder of derivative claims of the Debtors or the Debtors' Estates that may implicate the Policy (collectively, the "**Barred Claims**"). For purposes of the Bar Order, "**Barred Persons**" shall mean any person or entity that has held, holds, may hold, or purports to hold a claim or other debt or liability or an interest in or other right against, in, arising out of, or in any way related to the Debtors, whether that person or entity filed a Proof of Claim, Proof of Interest, or otherwise, unless such Barred Person timely objects to the Bar Order and the Court enters a Final Order that opts-out the objecting party from the Bar Order. In the event such potential holder of a claim timely objects and the Parties and/or Court do not resolve or overrule the objection to the satisfaction of the Insured Released Parties, then the Insured Released Parties shall have the right to withdraw from the Settlement without the need for Court approval or the consent of any Party.

Notwithstanding anything herein to the contrary, the Bar Order shall not relieve the Defendants from their obligations under this Settlement Agreement. The intent and purpose of the Bar Order is to enjoin directly the most expansive and comprehensive group of third parties, whether such party is known or unknown, identified or unidentified, suspected or unsuspected, named or unnamed in any litigation, from pursuing any and all claims or causes of action against the Insured Released Parties that would implicate the Policy. Notwithstanding anything herein to the contrary, the Bar Order shall NOT (i) relieve the Parties from their obligations under this Settlement Agreement; (ii) bar or otherwise affect any claims or defenses in other currently pending actions or proceedings in which any of the Parties has appeared as a named party; (iii) bar or otherwise affect any claims or defenses between the Trustee and the JGB Defendants and Rochon Capital in the JGB Adversary; nor (iv) preclude the Barred Persons from pursuing any independent claim or action against any of the Insureds, but only if such independent claim or action is completely and wholly unrelated to the activities of the Debtors and such claim is not able to implicate the Policy in any manner. To be clear, the Bar Order shall prevent any and all actions related to any of the Barred Claims against and/or that may implicate the Insurer and/or the Policy. The Court shall expressly retain jurisdiction in enforcing, implementing, and interpreting the scope of the Bar Order.

5. **Bankruptcy Court Approval**. The Settlement contained herein shall become effective and binding in all respects upon the Court entering an Order ("**9019 Order**"), which (i) grants the 9019 Motion and approves the Settlement Agreement, (ii) authorizes the Insurer to make the Settlement Payments and pay Defense Costs (defined below), (iii) includes a Bar Order under the terms and conditions set forth herein, and (iv) provides that in the event a Barred Person asserts a claim against any Insured Released Party, that is otherwise found to have been covered under

the Bar Order, then the Insured Parties shall be entitled to recover attorneys' fees and costs against such Barred Person and his counsel. In addition, the form of the 9019 Order shall be acceptable to each of the Parties, be binding on any subsequently appointed trustee, and become a Final Order (as defined below) before the Settlement becomes effective. In the event the Bankruptcy Court denies the 9019 Motion or the 9019 Order is entered by the Bankruptcy Court but is subsequently reversed on appeal by and through a Final Order ("**Reversal Order**"), then (i) the Parties shall be returned, as of such date, to the *status quo ante* prior to their entry into this Settlement Agreement, (ii) the Parties agree that any statute of limitations in respect of the Claims shall be and shall have been tolled through the date of the Reversal Order, and (iii) this Settlement Agreement shall terminate and, except for the tolling agreement in the preceding clause, shall be deemed null and void without any continuing force or effect whatsoever. For purposes of this Settlement Agreement, a "**Final Order**" means an order or judgment of the Court that (i) has not been appealed, or (ii) if appealed has not been reversed, stayed, modified or amended as a result of such appeal and as to which the time to file any subsequent appeal has expired.

6. **General Release of Defendants and all other Insureds by the Trustee**. Effective immediately upon the Trustee's receipt of the Final Settlement Payment in cleared funds, and in consideration of the Settlement Payments, the Trustee, individually and on behalf of the Debtors and the Debtors' Estates, his retained professionals, agents, successors, heirs, and assigns, and any other person or entity claiming now or in the future through or on behalf of any of them ("**Trustee Releasors**") agree to and shall be deemed to have fully and generally released and discharged the Defendants, and all other Insureds, and each of their respective professionals, agents, successors, representatives, fiduciaries, heirs, administrators, executors and assigns (collectively the "**Defendant Releasees**") from and against any and all manner of claims (including the Claims),

causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs that any of the Trustee Releasors now have, have had or in the future may have against any of the Defendant Releasees arising out of, related to or in connection with, directly or indirectly, the Debtors, the Debtors' Estates, the Defendants, the Insureds, the Insurer, the Policy, and/or the facts and circumstances underlying the Claims. Notwithstanding anything herein to the contrary, the release of the Defendant Releasees herein shall not release the Defendants or the Insureds from any of their obligations under this Settlement Agreement. Further, such release shall not extend to proofs of claim filed in the Bankruptcy Cases, and the Trustee expressly reserves the right to object to any and all proofs of claim which may have been filed by or on behalf of any party, including but not limited to the Defendant Releasees.

7. **General Release of Trustee, Debtors and Debtors' Estates by the Defendants.**

Effective immediately upon the Trustee's receipt of the Final Settlement Payment in cleared funds as provided below, and in consideration for the obligations herein, the Defendants, individually and on behalf of their retained professionals, agents, successors, representatives, fiduciaries, heirs, administrators, executors and assigns, and any other person or entity claiming now or in the future through or on behalf of any of them, (collectively the "**Defendant Releasors**") agree to and shall be deemed to have fully and generally released and discharged the Trustee, individually and on behalf of the Debtors and the Debtors' Estates, his retained professionals, agents, successors, heirs, and assigns, and any other person or entity claiming now or in the future through or on behalf of any of them (collectively the "**Trustee Releasees**") from and against any and all manner of claims (including the Claims), proofs of claim, causes of actions, suits, debts, dues, accounts, bonds,

covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs that any of the Defendant Releasors now have, have had or in the future may have against any of the Trustee Releasees arising out of, related to or in connection with, directly or indirectly, the Debtors, the Debtors' Estates, the Defendants, all Insureds, the Insurer, the Policy, and/or the facts and circumstances underlying the Claims. Notwithstanding anything herein to the contrary, the release of the Trustee Releasees herein shall not release the Trustee Releasees from any of their obligations under this Settlement Agreement. Further, such release shall not extend to Proof of Claim No. 100 filed in the Bankruptcy Cases by or on behalf of Rochon Capital Partners Lending Ltd. f/k/a Rochon Capital Partners Ltd.

8. **<u>Limited Release By and Among the Defendants</u>:** Effective immediately upon the Trustee's receipt of the Final Settlement Payment in cleared funds, and in consideration for the obligations herein, except for any claims between Michael Bishop and J. Rochon and Rochon, Jr., which are specifically excluded from this limited release by and among the Defendants, provided that any such claims either Bishop, J. Rochon or Rochon, Jr. assert against each other do not affect the Bar Order nor involve the other Defendant Releasors, each of the Defendant Releasors agrees to and shall be deemed to have fully and generally released and discharged each of the Defendant Releasees, their retained professionals, agents, successors, heirs, and assigns, and any other person or entity claiming now or in the future through or on behalf of any of them from and against any and all manner of claims (including the Claims), causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs that any of the Defendant Releasors now

have, have had or in the future may have against any of the other Defendant Releasees, arising out of, related to or in connection with, directly or indirectly, the Claims. Notwithstanding anything herein to the contrary, the release of the Defendant Releasees herein shall not release them from any of their obligations under this Settlement Agreement nor does it impact the claims pending in *JRjr33, Inc. & Agel Enterprises, Inc. v. Michael Bishop, et al.*, in the 116th Judicial District Court of Dallas County, Texas; Cause No. DC-17-15206. For the avoidance of doubt, the release of the Defendant Releasees by the Defendant Releasors is limited to the Claims, and claims that could implicate the Insurer and/or the Policy.

9. **Release of Insurer and Policy**.  Subject to Section 5, effective immediately upon the Trustee's receipt of the Final Settlement Payment in cleared funds, the Parties, on behalf of themselves, together with their respective attorneys, agents, heirs, executors, fiduciaries, representatives, predecessors, successors, affiliates and assigns, and all persons acting by, through or under them, and each of them, fully release and forever discharge the Insurer, together with its predecessors, successors, affiliates, and assigns, and all persons acting by, through or under them, from all known and unknown claims, liabilities, obligations, promises, agreements, (including the Policy), controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees and expenses (including attorneys' fees and costs), of any nature whatsoever, whether or not apparent or yet to be discovered, related to the Debtors, the Debtors' Estates, the Policy, and/or the facts and circumstances underlying the Claims, whether or not asserted therein; provided that nothing in this paragraph releases (a) any Party from its obligations under this Settlement Agreement; or (b) any Party from its liability for breach of any term, warranty, or representation in this Settlement Agreement; or (c) the Insurer from payment of Defense Costs (as defined in and in accordance with the terms of the Policy) incurred in connection with this

Settlement Agreement. The foregoing release and discharge shall include, without limitation, any assertion that, in connection with or in any way related to this Settlement Agreement and/or any of the Claims, the Insurer breached any obligation under or in connection with the Policy or any other policy of insurance issued by the Insurer for the benefit of any of the Insureds, or engaged in any bad faith, conduct, or any breach of any implied covenant of good faith or fair dealing or unfair claim handling practice. **The Insurer's payment of the Settlement Payments and any Defense Costs (as defined in the Policy) shall be deemed to have exhausted the limits of the Policy. Moreover, upon the Trustee's receipt of the Final Settlement Payment in cleared funds, the Policy shall be deemed immediately discharged and cancelled, and the Insurer shall be immediately released from any and all obligations under the Policy and the exclusive right to use any remaining Policy Proceeds in its sole discretion, with the exception of the terms regarding payment of Defense Costs set forth in Section 11 below.**

10. **Releases General:** All of the claims released in paragraphs 6 through 9 above ("**Released Claims**") shall be self-effectuating and fully effective upon the 9019 Order becoming a Final Order and the Trustee's receipt of the Final Settlement Payment in cleared funds. This Settlement Agreement provides NO THIRD PARTY WITH ANY RELEASES, and nothing contained herein shall be deemed to establish any rights or benefits for any third persons. This Settlement Agreement ONLY releases the Parties, Insurer, and related parties identified herein, including, without limitation, all Insureds (as defined in the Policy), the Insurer, and the Policy, and only to the extent provided herein. All persons and/or entities providing for and benefitting from the Released Claims herein intend that any and all releases shall be mutual and where there exists any contradiction with respect to mutuality, the drafters and signors agree that the intent of the document is to read all releases as mutual.

11. **Defense Costs.** The Parties agree to cooperate, as set forth in this paragraph and the Stay Relief Order, with the Insureds to ensure that all of the Insureds' current and future reasonable attorneys' fees, professional fees, and expenses relating to the D&O Adversary, JGB Adversary, this Settlement Agreement, and other covered matters will be funded by the Policy Proceeds, to the extent any such fees are approved by the Insurer, provided that the Trustee is not guaranteeing that any such payments will be made and further that the Insureds' requests for reasonable attorneys' fees will not interfere with nor affect the timing or amount of payment of the Settlement Payments. To that end, the Parties further agree that the following terms regarding payment of Defense Costs shall be included in the 9019 Order:

    a. The Trustee, the Debtors' Estates, and any subsequent trustees for the Debtors' Estates, are not allowed to recover any payment of Defense Costs, including attorneys' fees, advanced in accordance with the terms of the Policy and the 9019 Order;[5]

    b. Nothing in this Settlement Agreement nor the 9019 Order shall constitute (i) a waiver, modification, or limitation of the contractual rights and obligations provided for in the Policy or the Insurer's reservation of all of its rights, remedies and defenses under the Policy; or (ii) a finding that such sums are due and owing under the Policy;

    c. Subject to the terms of the Settlement Agreement and the right to pay Defense Costs and Bar Order Defense Costs, nothing in this Settlement Agreement nor the 9019 Order shall give the Insureds or their counsel, representatives, agents, or assigns, or anyone acting through them, any rights in and to the Settlement Payments, and the Parties expressly acknowledge that, notwithstanding anything in this Settlement Agreement, in the event the Insurer fails to pay any of the Insureds' current and future reasonable attorneys' fees, professional fees, and expenses relating to the Bankruptcy Cases, the D&O Adversary, the JGB Adversary, this Settlement Agreement, and related matters, for any reason, the Insureds or their counsel, representatives, agents or assigns or anyone acting through them shall have no claim in or to the Settlement Payments and the Releases herein in favor of the Trustee Releasees shall remain in full force and effect; and

---

[5] This provision in no way affects the right of Trustee's counsel to recover attorney's fees and reimbursement of expenses from the Debtors' Estates in accordance with the *Amended Application to Employ Rochelle McCullough, LLP as General Bankruptcy Counsel and Special Litigation Counsel for Robert Yaquinto, Jr., Chapter 7 Trustee* [Dkt. No. 191] and the *Order* granting same [Dkt. No. 193].

d.      The 9019 Order shall be immediately valid and fully effected upon its entry and the fourteen (14) day stay imposed pursuant to Bankruptcy Rule 4001(a) shall be waived.

12.    **Dismissal of Claims Against Insureds**.  Within seven (7) days of receipt of the Final Settlement Payment in cleared funds, the Trustee shall file all appropriate documents and effectively obtain the dismissal, with prejudice and without costs as to all Defendants, of the D&O Adversary and the Claims against J. Rochon and D. Rochon in the JGB Adversary (Count 2 for negligent misrepresentation as to J. Rochon only; Count 3 for marshaling of assets; Count 4 for 1-year preference payments as to J. Rochon and D. Rochon only).

13.    **No Admissions.** This Settlement Agreement is entered into for settlement and compromise of disputed claims, including the Claims, the Barred Claims and the Released Claims, and shall not be treated as an admission by any Party of any liability or wrongdoing whatsoever or as an admission by any Party of any violation of the rights of any other Party or person, or the violation of any law, statute, regulation, duty, or contract whatsoever.  By entering into this Settlement Agreement, the Parties do so solely to avoid the inconvenience, expense, and uncertainty of further proceedings and expressly disclaim any liability to any other party or person.

14.    **Attorneys' Fees and Costs.**  Subject to the rights of any Defendant for payment by the Insurer of Insurer approved Defense Costs, each Party will bear its own expenses, including any costs or attorneys' fees incurred in connection with the negotiation and execution of this Settlement Agreement, the Claims, the D&O Adversary, the JGB Adversary, and the Bankruptcy Cases.  Notwithstanding the foregoing, if any Party is required to enforce its rights under this Settlement Agreement, then the prevailing Party or Parties of any such action shall be entitled to its reasonable attorneys' fees and costs from the non-prevailing Party or Parties.

15.    **Notices**.  Any notice required or permitted to be given pursuant to any provision of this Settlement Agreement shall be given in writing and delivered in person or sent by registered

or certified mail, postage prepaid and return receipt requested, or by overnight courier with a parcel

tracking system, (with copies sent by email), to the Parties at their respective counsel's address set

forth below:

**As to Trustee:**

KEVIN D. MCCULLOUGH, ESQ.
KATHRYN G. REID, ESQ.
**ROCHELLE MCCULLOUGH, LLP**
325 North St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Emails: kdm@romclaw.com; kreid@romclaw.com

**As to Defendant, Michael Bishop:**

HUNTER JOHNSON, ESQ.
**CONSTANGY BROOKS, SMITH & PROPHETE, LLP**
1201 Elm Street, Suite 2550
Dallas, TX 75270
Telephone:    (214) 646-8425
Direct:       (214) 646-3421
Email: hjohnson@constangy.com

**As to Defendant, William H. Randall:**

WILLIAM L. SIEGEL, ESQ.
**COWLES & THOMPSON**
901 Main St., Suite 3900,
Dallas, TX 75202
Telephone: (214) 672.2126
Email: bsiegel@cowlesthompson.com

**As to Defendants, John P. Rochon, Donna Rochon, John P. Rochon, Jr., and Heidi Rochon Hafer:**

GEOFFREY S. HARPER, ESQ.
**WINSTON & STRAWN**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (214) 453-6476
Email: GHarper@winston.com

or to such other address as the party to whom notice is to be given may, from time to time, designate in writing delivered in a like manner. All such notices shall be deemed received as of the date of personal delivery or five (5) days following deposit in the U.S. Mail.

16. **Entire Agreement.** This Settlement Agreement constitutes the only existing and binding agreement of settlement among the Parties, and the Parties acknowledge that there are no other warranties, promises, assurances or representations of any kind, express or implied, upon which the Parties have relied in entering into this Settlement Agreement, unless expressly set forth herein. This Settlement Agreement shall not be modified except by written agreement signed by all Parties.

17. **Governing Law/Forum Selection.** The Parties agree that the United States Bankruptcy Court for the Northern District of Texas shall have continuing jurisdiction to enforce the terms of this Settlement Agreement, and the Parties expressly consent to the exercise of personal jurisdiction over them for that limited purpose. This Settlement Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without regard to conflict of law principles.

18. **Acknowledgment of Terms.** The Parties have read and understand the terms of this Settlement Agreement, have consulted with their respective counsel, and understand and acknowledge the significance and consequence of each such term. No Party is relying on information provided by or from the other Party in entering into this Settlement Agreement and there are no duties of disclosure by any Party to another. This Settlement Agreement was executed after arm's length negotiations among the Parties and their respective counsel, and reflects the conclusion of the Parties that this Settlement Agreement is in the best interests of the Parties. Each Party represents and warrants that the person executing this Settlement Agreement on his, her, or

its behalf has all authority and legal right to do so and separately acknowledges and represents that this representation and warranty is an essential and material provision of this Settlement and shall survive execution of this Settlement Agreement.

19. **Advice of Counsel.** The Parties acknowledge that they have been represented by counsel of their own choice in the negotiations leading up to the execution of this Settlement Agreement, have read this Settlement Agreement, and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of same. The Parties have had the Settlement Agreement fully explained to them by their respective counsel and understand the terms and provisions of this Settlement Agreement and its nature and effect. The Parties further represent that they are entering into this Settlement Agreement freely and voluntarily, relying solely upon the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

20. **Neutral Interpretation.** In the event any dispute arises among the Parties with regard to the interpretation of any term of this Settlement Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

21. **Execution of Documents.** This Settlement Agreement may be executed in counterparts; that is, not all signatures need appear on the same copy and execution of counterparts shall have the same force and effect as if the Parties had signed the same instrument. All such executed copies shall together constitute the complete Settlement Agreement. The Parties may execute this Settlement Agreement and create a complete set of signatures by exchanging PDF copies of the executed signature pages. Signatures transmitted in PDF format shall have the same effect as original signatures.

22.    **Execution by Client or Counsel.**  By execution below, consistent with this Settlement Agreement, each Party agrees and affirmatively represents that it has the full capacity and authority to execute, perform, and be bound by each and every term of this Settlement Agreement; and that if its undersigned counsel is executing this Settlement Agreement on its behalf, that such counsel is qualified and has the authority to do so and to bind its client to the terms of this Settlement Agreement as if the Party had actually signed the Settlement Agreement.

23.    **Non-Party Defendant.** Richmond Holdings and any Insureds that are not a signatory to this Settlement Agreement shall be referred to as a "**Non-Party Defendant(s)**."  By entering into this Settlement Agreement, it is the intent of the Parties to reach a settlement with respect to the Claims; and accordingly, this Settlement Agreement shall apply to all Non-Party Defendants, whether or not they become a signatory to this Settlement Agreement.  Any Non-Party Defendant who is not a signatory to this Settlement Agreement will be subject to the Bar Order.

24.    **No Assignment**.  The Parties have not, and will not prior to the date the Settlement becomes effective, transferred, assigned, or sold all or any portion of any claim or cause of action that they may have or have had against any other Party to this Settlement Agreement, whether or not asserted in the Bankruptcy Cases, D&O Adversary, JGB Adversary, or otherwise.  The Parties further understand and agree that this Settlement Agreement, and the rights and responsibilities hereunder, may not be assigned without the written consent of the other Parties.

25.    **Divisions and Headings.**  The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.

26.    **Waiver**.  The failure of a Party to enforce any provision or provisions of this Settlement Agreement shall not in any way be construed as a waiver of any such provision or provisions as to any future violations thereof, nor prevent that Party thereafter from enforcing each and every other provision of this Settlement Agreement.  The rights granted the Parties herein are cumulative and the waiver of any single remedy shall not constitute a waiver of such Party's right to assert all other legal remedies available to it under the circumstances.  No extension of time of performance of an act or obligation under this Settlement Agreement shall constitute an extension of time of performance of any other act or obligation.

27.    **Cooperation**.  The Parties agree to cooperate with each other to the extent necessary and commercially reasonable, and use their collective best efforts, to enable the Trustee to obtain entry of the 9019 Order (inclusive of the Bar Order) and to cause the 9019 Order to become a Final Order.  The Parties agree to provide the Trustee and any successor(s) with any and all reasonably requested materials, documents, information and assistance in connection with the Trustee's efforts to seek and obtain entry of the 9019 Order (including the Bar Order).  The Parties also agree to promptly execute and deliver such further documents and take such other actions as may be reasonably necessary to carry out the purpose and intent of this Settlement Agreement.

28.    **No Public Statements**.  The Parties agree that there will be no press releases nor public announcements of the Settlement reflected in this Settlement Agreement, other than the 9019 Motion seeking Bankruptcy Court approval of the Settlement Agreement or as otherwise ordered by the Court.

29.    **Time is of the Essence**.  Time is of the essence for the Parties to perform their obligations under this Settlement Agreement.

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement on the date(s) indicated below.

**ROBERT YAQUINTO, JR., Trustee**        **MICHAEL BISHOP**

By: _____
Name: _____
Title: _____
Dated: _____

By: _____
Name: _____
Title: _____
Dated: _____

**WILLIAM H. RANDALL**

By: _____
Name: _____WILLIAM H. RANDALL_____
Title: _____
Dated: _____SEPTEMBER 7, 2021_____

**JOHN P. ROCHON**

By: _____
Name: _____
Title: _____
Dated: _____

**DONNA ROCHON**

By: _____
Name: _____
Title: _____
Dated: _____

**JOHN P. ROCHON, JR.**

By: _____
Name: _____
Title: _____
Dated: _____

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement on the date(s) indicated below.

**ROBERT YAQUINTO, JR., Trustee**

By: _Robert Yaquinto_
Name: ROBERT YAQUINTO Jr
Title: Chapter 7 Trustee
Dated: September 17, 2021

**MICHAEL BISHOP**

By: _____
Name: _____
Title: _____
Dated: _____

**WILLIAM H. RANDALL**

By: _____
Name: _____
Title: _____
Dated: _____

**JOHN P. ROCHON**

By: _____
Name: John P Rochon
Title: _____
Dated: 9-8-2021

**DONNA ROCHON**

By: _Donna Rochon_
Name: Donna Rochon
Title: _____
Dated: 9-8-2021

**JOHN P. ROCHON, JR.**

By: _____
Name: John Rochon, Jr
Title: _____
Dated: 9-8-2021

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement on the date(s) indicated below.

**ROBERT YAQUINTO, JR., Trustee**          **MICHAEL BISHOP**

By: _____          By: _____
Name: _____          Name: _____
Title: _____          Title: _____
Dated: _____          Dated: _____

**WILLIAM H. RANDALL**

By: _____
Name: _____
Title: _____
Dated: _____

**JOHN P. ROCHON**

By: _____
Name: John P Rochon
Title: _____
Dated: 9-8-2021

**DONNA ROCHON**

By: Donna Rocha
Name: Donna Rochon
Title: _____
Dated: 9-8-2021

**JOHN P. ROCHON, JR.**

By: _____
Name: John Rochon, Jr
Title: _____
Dated: 9-8-2021

**HEIDI ROCHON HAFER**

By: _____
Name: _____Heidi M Hafer_____
Title: _____
Dated: _____9-8-21_____